UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID MICHAEL GARRETT,

                              Plaintiff,      17-CV-1009-FPG

v.                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## Introduction

Plaintiff David Michael Garrett brought this action pursuant to Title II of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 10, 13. For the reasons that follow, plaintiff's motion for judgment on the pleadings (ECF No. 10) is **granted in part** and **denied in part**, and the Commissioner's motion (ECF No. 13) is **denied**.

## Background and Procedural History

On January 28, 2014, plaintiff filed an application for disability insurance benefits alleging disability beginning on January 20, 2014. Administrative Record ("AR.") at 150-51. After the application was denied, he timely requested a hearing. AR. at 90-91. On June 17, 2016, plaintiff appeared with his counsel, Vide Card, Esq., and testified at a hearing before Administrative Law Judge David J. Begley ("the ALJ"). AR. at 39-66. A Vocational Expert ("VE"), Carly Coughlin, also testified at the hearing. The ALJ issued an unfavorable decision on August 12, 2016. AR. at 18-33. Plaintiff then timely requested review by the Appeals Council, which the Council denied

on August 9, 2017, making the ALJ's decision the final decision of the Commissioner. AR. at 1-5. Plaintiff subsequently filed this lawsuit.

## Legal Standard

The scope of this Court's review of the ALJ's decision denying benefits to plaintiff is limited. It is not the function of the Court to determine *de novo* whether plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

This deferential standard of review does not mean, however, that the Court should simply "rubber stamp" the Commissioner's determination. "Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *see also Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to

2

develop the administrative record."). While not every factual conflict in the record need be explicitly reconciled by the ALJ, "crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). Moreover, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

## Discussion

### A) The ALJ's Decision

At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 20, 2014. AR. at 20. At step two, the ALJ found that plaintiff suffered from two severe impairments: chronic pancreatitis status post pancreaticoduodenectomy (Whipple procedure) and postsurgical anastomotic ulcers. *Id.* The ALJ determined that plaintiff's other impairments, such as diabetes mellitus, chondromalacia, low back pain, right inguinal hernia, hypertension, and depression did not cause more than minimal limitations on his ability to perform basic work activities, and, as such, were not severe impairments. AR. at 21-23.

3

At step three of the analysis, the ALJ found that the severity of plaintiff's impairments did not meet or equal the criteria of any listing. AR. at 24-25. The ALJ then determined that plaintiff retained the residual functioning capacity ("RFC") to perform light work with several exertional and non-exertional limitations. Specifically, he found that plaintiff cannot climb ladders, ropes, or scaffolding, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The ALJ also found that plaintiff must avoid hazardous machinery, unprotected heights and open flames, and that he can perform low stress job that is free from fast-paced production requirements and hazardous conditions, which requires only occasional decision-making and changes in the work setting. AR. at 25.

At step four, the ALJ found that plaintiff cannot perform any past relevant work. He then proceeded to step five, where he determined that there are jobs in the national economy that a person of plaintiff's age, education and work experience could perform. AR. at 32-33. Specifically, the ALJ determined that plaintiff can perform work as a mail sorter, laundry worker, inspector, and hand packager. AR. at 33.

**B) Analysis**

Plaintiff argues that remand is warranted because the ALJ failed to evaluate and consider his complaints of frequent bathroom use and chronic diarrhea in his RFC, and that the RFC was not supported by substantial evidence because, by assigning little weight to all opinion evidence, the ALJ based the RFC assessment on his lay opinion. Pl.'s Br. 9-14 (ECF No. 10-1).

a) Plaintiff's subjective complaints of chronic diarrhea and frequent bathroom use.

A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). The regulations provide that the RFC

4

assessment must be "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). To determine the claimant's RFC, the ALJ considers his physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 416.945(a). Even though the ALJ is required to consider the claimant's subjective complaints of pain and other symptoms, *see* 20 C.F.R. § 404.1529, the ALJ is not obligated to accept the claimant's subjective complaints without question. *McLaughlin v. Sec'y of Health. Educ. & Welfare*, 612 F.2d 701, 704–05 (2d Cir. 1980); *see also Senecal v. Barnhart*, No.06-CV-0215, 2008 WL 10655337, at *8 (N.D.N.Y. Mar. 24, 2008) ("[S]ubjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.") In fact, the ALJ has discretion in assessing credibility of the claimant's testimony in light of the medical findings and other evidence in the record. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *see also* 20 C.F.R § 416.929 (c)(3); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.")

In the present case, plaintiff testified that he frequently has the need to use the bathroom, which is particularly pronounced in the morning, and that he has had occasions when he has soiled his clothing after losing control of his bowels. AR. at 57-58. Plaintiff also testified that, at the time he was employed, he had difficulties getting to work on time due to losing control of his bowels, and that he needed frequent bathroom breaks while at work. AR. at 61-62. However, plaintiff testified that his frequent bathroom breaks were not the reason why he was no longer employed. AR. at 62. Despite plaintiff having these symptoms, he did not wear a diaper, and,

5

instead, preferred to remain at home, where he was able to use the bathroom whenever needed. AR. at 58.

While the Court is sympathetic to plaintiff's symptoms of frequent diarrhea and discomfort it might bring, it, nonetheless, finds that the ALJ did not err in accessing credibility regarding his frequent bathroom breaks, and finds that plaintiff's claim of symptoms so severe as to be totally disabling is not supported by the record.

Throughout his brief, plaintiff consistently referred to his diagnoses of "chronic diarrhea" when alleging that the ALJ has failed to consider it in his RFC determination.[1] ECF No. 10-1 at 9, 11, 14. Plaintiff appears to argue with absolute certainty that he had developed chronic diarrhea as a result of a Whipple procedure he had undergone in August 2012.[2] AR. at 11. While the record contains plenty of evidence supporting plaintiff's diagnosis of chronic pancreatitis, it is, nonetheless, silent with respect to the diagnosis of chronic diarrhea, which plaintiff is alleging the ALJ has failed to consider.[3] Even though the Court acknowledges that these two medical concerns may relate to one another in some cases, here, however, it disagrees with plaintiff's blanket conclusions that the record before it is replete with evidence supporting plaintiff's claims of chronic diarrhea. Instead, while the record undeniably contains some treatment notes that mention

---

[1] Chronic diarrhea is diarrhea that lasts for more than 2-4 weeks. https://www.cdc.gov/healthywater/hygiene/disease/chronic_diarrhea.html.

[2] The record demonstrates that plaintiff has a history of alcohol-induced chronic pancreatitis, which was treated with a Whipple procedure in August 2012. AR. at 283, 289-93, 414.

[3] Discharge report submitted by Dr. Tahnee following plaintiff's treatment for gastrointestinal bleed, along with notes of Dr. Corasanti, make references to chronic diarrhea as one of plaintiff's past medical concerns. AR. at 389, 414. Such notes appear to be based on plaintiff's subjective statements made to the physicians as the rest of the record is void of any treatment notes or medical opinions by plaintiff's primary treating physicians that corroborate the diagnosis of chronic diarrhea. Additionally, the record contains reports by Dr. Collins, plaintiff's primary treating physician, in which he opined that plaintiff could not return to work due to chronic diarrhea. AR. 442, 499, 504, 583. The Court does not find them reliable because they were provided at plaintiff's request in response to the forms submitted for purposes of private disability and life insurance benefits. For the reasons discussed below, conclusions contained in these reports were inconsistent with Dr. Collins' treatment notes.

plaintiff having loose stool, such notes, however, are sparse and insufficient to demonstrate that plaintiff's intermittent complaints of diarrhea had reached the level of chronic diarrhea.

Plaintiff's frequent need to use the bathroom is not supported by the record to the extent he is alleging it does. While the Court recognizes that having diarrhea inevitably could cause plaintiff a great deal of discomfort, it does not cause more that minimal limitations on his ability to perform basic work activities because most treatment notes that mention diarrhea are either predate the Whipple procedure or relate to the post-surgical gastrointestinal bleed developed as a result of marginal ulcers. AR. at 263, 283, 297. Despite complaints of fatigue and some abdominal pain, plaintiff often appeared healthy, happy, relaxed and well-nourished during medical examinations, having soft abdomen, consistent weight, and normal sounding bowels. AR. at 297, 421, 426, 428, 432, 435, 465, 481, 493, 628-29. Specifically, during plaintiff's visits with Dr. Collins, diarrhea was never identified as his primary medical concern. At most, plaintiff's loose or melenic stool was noted intermittently as a side effect of his primary digestive impairments - chronic pancreatitis and gastric ulcers. AR. at 421-23, 425-26, 429, 432-37, 455, 459-60, 466-67, 473-74, 478, 481-82. Treatment records of plaintiff's gastroenterologist, Dr. Kulju, also demonstrate that plaintiff's gastrointestinal symptoms have improved once the ulcers have healed. AR. at 584. The results of a CT scan of plaintiff's abdomen were unrevealing, and Dr. Kulju noted that, despite having occasional abdominal pain, plaintiff was doing well, and did not have any tenderness, dyspepsia, abdominal wall hernia, melena or blood in his stool. AR. at 605, 634. Similarly to treatment records of plaintiff's primary physicians, examination reports of consultative examiners Samuel Balderman, M.D. and Rachell Hill, Ph.D., while listing diabetes, chronic pancreatitis, pancreatic pseudocysts, marginal ulcers, anemia and problems with plaintiff's legs, do not make references to diarrhea, let alone chronic diarrhea, as plaintiff's primary physical

7

complaint. AR. at 392, 397. *See Collins v. Berryhill*, 1:16-cv-00761-MAT, 2018 WL 6171709, at *6 (W.D.N.Y. Nov. 26, 2018) (plaintiff's testimony about frequent diarrhea and daily episodes of soiling himself was inconsistent with treatment noted that document lack of any gastrointestinal complaints or express denial of diarrhea); *Senecal*, 2008 WL 10655337, at *8 (plaintiff's complaints of debilitating abdominal pain and numerous daily episodes of diarrhea was not supported by objective findings); *Knight v. Heckler*, No.83 Civ. 2727-CSH, 1985 WL 2889, at *3 (S.D.N.Y. Oct. 1, 1985) (medical evidence in the record did not support plaintiff's complaints of inability to work due to intermittent bouts of diarrhea).

The record also contains evidence demonstrating that plaintiff's diarrhea, along with other gastrointestinal symptoms, were well-controlled by medications. Specifically, plaintiff admitted that the increased dosage of Creon had improved his bowel movements and helped him gain weight. AR. at 586, 590, 620, 622. Dr. Collins repeatedly noted that plaintiff's pain management was controlled and satisfactory. AR. at 628-29. In addition to prescribing Creon, Dr. Collins recommended that plaintiff try lactose avoidance diet to ease his symptoms. AR. at 588, 590. Similarly to Dr. Collins, Dr. Kulju observed that, despite some occasional upper abdominal pain, plaintiff was doing well while on medication, and agreed with his continuous intake of Creon and Pantoprazole that have helped him gain weight. AR. at 565, 635.

The ALJ's decision included a thorough discussion of plaintiff's daily activities in his credibility finding. The Second Circuit has long recognized that the ALJ is allowed to consider activities of daily living in making a credibility determination. *See Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018)(an ALJ is entitled to consider inconsistencies between a claimant's allegations and his activities of daily living); *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (no error in the ALJ's credibility assessment found when the ALJ relied on testimony and

treatment notes from plaintiff's physicians stating that plaintiff could perform light duty work, as well as on plaintiff's own account of his activities of daily living); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (plaintiff's complaints of pain were not supported by his activities of daily living, caring for his one-year-old child, vacuuming, washing dishes, occasional driving, watching television, reading and using computer); *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984)(the objective medical data, testimony of plaintiff's relatives about his daily activities, and conclusions of plaintiff's physicians did not support plaintiff's complaints of disabling pain). Here, plaintiff argues that his activities of daily living do not undermine his reports of frequent diarrhea. ECF No. 16. While the Court recognizes that many of plaintiff's activities, such as doing laundry, cooking, watching television, and taking care of his children, are done from or in the vicinity of his home where his access the bathroom is easy, it notes, however, that plaintiff is involved in other activities that do not present such opportunity. Specifically, plaintiff testified that he takes 10-20-minute walks around the neighborhood and does grocery shopping. AR. at 56, 400. He can drive. He often visits with his parents who live nearby, and has traveled nearly two hours away to Niagara Falls to visit with his mother-in-law. AR. at 52-53. Even though plaintiff does not socialize with friends a lot, he testified that it was due his friends' relocating out of town. AR. at 400. Plaintiff also advised Dr. Collins that even though he sometimes had loose stool, he was, nonetheless, able to work. AR. at 434. Therefore, the Court finds that because plaintiff's subjective allegations of diarrhea and frequent need to use the bathroom were not supported by the record and by his activities of daily living, the ALJ's credibility assessment of plaintiff's allegations was proper. Accordingly, the Court will not disturb it, and finds that remand is not warranted on this basis.

 b) <u>The ALJ's RFC assessment</u>

Generally, the treating physician rule provides that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion, ... that opinion will not be deemed controlling." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Even though an ALJ may discount a treating physician's opinion, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *See* 20 C.F.R. § 416.927(c)(1)-(6); *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion and we will continue remanding when we encounter opinions from ALJ's [sic] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). Courts of our circuit have consistently opined that the ALJ's failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician could be a ground for remand. *See Schaal v. Apfel*, 134 F.3d 496, 503-05 (2d Cir. 1998); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). However, remand for consideration of an improperly excluded opinion of a treating physician is not necessary when its review would not lead to a different conclusion. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

Also, the RFC assessment need "not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). In fact, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Id.* However, even though the ALJ is free to choose between properly submitted medical opinions, she may not substitute her own lay opinion for those of medical experts. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

10

Here, plaintiff argues that the RFC finding was flawed because the ALJ assigned "limited" weight to all four medical opinions contained in the record that addressed plaintiff's physical limitations, and, as a result, determined plaintiff's RFC based on his own lay opinion. ECF No. 10-1. Plaintiff also argues that the ALJ was obligated to contact plaintiff's treating physician, Dr. Collins, to clarify his opinion regarding plaintiff's physical limitations. This Court agrees.

Indeed, the ALJ afforded "little" weight to opinions of Dr. Collins, plaintiff's treating physician, Dr. Balderman, state consultative examiner, and Dr. Mangold, state agency consultant, who reviewed plaintiff's disability application at the initial determination level. AR. at 30. The Court does not see a reason to question ALJ's basis for assigning limited weight to state agency examiners' opinions, particularly when they were vague and were provided by a non-examining physician at the initial determination level. AR. at 29; *see Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) ("[G]enerally, 'in evaluating a claimant's disability, a consulting physician's opinions or report should be given little weight.'")(quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)); *Ubiles v. Astrue*, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *11 (W.D.N.Y. July 2, 2012) (statements by the consultative examiner were too vague to serve as a proper basis for plaintiff's RFC). It also agrees with the ALJ's affording little weight to opinions of Dr. Collins, because it, too, finds them internally inconsistent and not supported by Dr. Collins' own treatment records. *See Rosier v Colvin*, 586 F. App'x 756, 758 (2d Cir. 2014)(the ALJ properly assigned less than controlling weight to a treating source opinion because it was inconsistent with other medical opinion evidence, plaintiff's daily activities, evaluation of consultative examiner, and treatment notes from other doctors); *Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (the ALJ properly afforded less than controlling weight to a treating source opinion because it was inconsistent with the doctor's own treatment notes and the opinion of a consultative examiner); *Cichocki v. Astrue*,

534 F. App'x 71, 75 (2d Cir. 2013) (ALJ can discount statements of a treating physician that conflict with his treatment notes). In fact, Dr. Collins' July 8, 2013 opinion was issued prior to the alleged onset date, while the other three opinions issued in February, April and October 2014 were inconsistent with his treatment notes because they generally suggested worsening of plaintiff's symptoms. AR. at 29-30. Indeed, in a Family Medical Leave form submitted prior to the onset date, Dr. Collins opined that plaintiff may have episodes of pain, vomiting and diarrhea, which, if not controlled, might cause him to be absent from work, while also noting that plaintiff was able to perform his job functions despite these symptoms. AR. at 521-22. In the February 2014 opinion, Dr. Collins indicated that plaintiff was incapacitated, and could have flare-ups every other month if vomiting and diarrhea were not controlled. AR. at 515. This opinion did not take into account the stabilization of plaintiff's symptoms once his medication was controlled after the gastrointestinal bleed that plaintiff experienced in March 2014. In his October 2014 opinion, Dr. Collins did not even mention plaintiff's vomiting or diarrhea, and, instead, noted that plaintiff's disability was caused by his limited stamina, and that it was expected to last through <u>May 31, 2050</u>. (emphasis added). AR. at 583. Additionally, all four opinions were not submitted for Social Security disability, but for private disability and life insurance purposes, and there is no evidence in the record to demonstrate how disability was defined in the context of those claims. Moreover, Dr. Collins's opinions regarding plaintiff's ability to work and estimates of the number of hours he could work in a work-day provided in his April and October 2014 opinions, in essence, were opinions on dispositive issues that are reserved to the Commissioner, and not the treating source. AR. at 500, 504, 583; *see* 20 C.F.R. § 404.1527 (d) (3); *Freeman v. Comm'r of Soc. Sec.*, No. 7:11-cv-1276(GLS), 2012 WL 2374726, at *3 (N.D.N.Y. June 22, 2012) (opinions from treating sources that plaintiff could only work part-time were not medical opinions, but were "opinions on

issues reserved to the Commissioner because they are administrative findings that are dispositive of a case"). Even though the Court agrees with the reasons why ALJ chose to afford limited weight to all four medical opinions, it cannot tell under these circumstances what opinions discussing plaintiff's physical limitations the ALJ relied upon to formulate his RFC. By not assigning significant weight to any opinions and, instead, assigning them only limited weight, the ALJ created an evidentiary gap in the record requiring remand. *See Stein v. Colvin*, No.15-CV-6753-FPG, 2016 WL 7334760, at *4 (W.D.N.Y. Dec. 19, 2016 ("[T]he ALJ's rejection of the only medical opinion in the record created an evidentiary gap in the record requiring remand.")(internal citations omitted); *Zayas v. Colvin*, No. 15-CV-6312-FPG, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016) (internal citations omitted) (remand was required where the ALJ's rejection of opinions of plaintiff's treating physicians created an evidentiary gap). Even though the record here demonstrates well-documented history of plaintiff's gastrointestinal problems, for which he has had continuous treatment, they generally contain bare medical findings that did not address how plaintiff's limitations affect his ability to perform work-related activities. Consequently, the Court finds that they were insufficient in providing the ALJ with enough particularity regarding plaintiff's physical limitations to rely upon in order to formulate his RFC. Therefore, remand is warranted here to allow the ALJ to obtain opinions from his treating physicians regarding his physical limitations to substantiate the record and consider then in formulating plaintiff's RFC. *Id.* at *4 ("the ALJ must recontact the treating source, order a consultative, examination, or have a medical expert testify at the hearing" to properly develop the record); *see also Cadet v. Colvin*, 121 F. Supp. 3d 317, 320 (W.D.N.Y. 2015) ("[W]here a record contains no formal RFC assessments from a treating physician, and does not otherwise contain sufficient evidence . . . from which the petitioner's RFC can be assessed, an 'obvious gap' exists and the ALJ is obligated to

further develop the record." (internal citations omitted); *Ubiles*, 2012 WL 2572772, at *9 (the ALJ is obligated to seek function-by-function assessment of plaintiff's limitations because "it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits"); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); *Zorilla v. Chater*, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required."). Therefore, on remand, the ALJ should obtain medical opinions from Drs. Collins, Kilju, and any other plaintiff's treating or consultative physicians he sees fit to assess plaintiff's physical limitations in order to formulate his RFC.

## Conclusion

For the above reasons, the Court denies the Commissioner's motion on judgment on the pleadings (ECF No. 13). The Court grants plaintiff's motion (ECF No. 10) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's motion to the extent that it seeks any other relief. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

Dated: May 17, 2019
Rochester, New York